23-7238. Council, hold on one second. Your audience is leaving. That's too bad. Please proceed. May it please the court. I'm Zachary Margulis Onuma. I represent the appellant, Darnell Feagins, in this appeal. This appeal presents a clean question of statutory interpretation that was preserved in the district court, which is the question of the meaning of 28 U.S.C. 291b, which grants authority to designate and assign a judge from the circuit court to sit on the district court, but requires that such designations be A, in the public interest, and B, temporary. In this case, there's two other cases that have been argued this fall. In this case, the place that it is makes it not temporary because Mr. Feagins is subject to lifetime supervision by Judge Sullivan. So this relationship between . . . This is a different case you're saying? This is a different case from the two prior cases in that way? It's a different fact pattern applying the same statute under different circumstances. Yeah, but why shouldn't we wait for those cases in any event? Because they will tell us something about what 1291b means. I mean, there are some differences, and the principal question I take it is how many times could the judge in an unfinished business keep coming back as new things are done? But to some extent, while that might be greater in this, it's also a problem in those cases, is it not? Yeah, I don't think the outcome in those cases will be controlling here for two reasons. Number one, this is a lifetime relationship between Judge Sullivan and Mr. Feagins. It doesn't end until one of them dies, and that can't be temporary. And the other cases that were adjudicated were for an 18-month VOSR on one and for a sentence reduction on the other. So those are over and done with, whereas Feagins is stuck with Judge Sullivan for life under the rule as it is now. Could you address then why this challenge is ripe? Well, it's ripe because Judge Sullivan didn't have authority to sentence him on the VOSR as of 2023. Can I make the other point, though, is that in this case, we preserved the issue and Judge Sullivan wrote an opinion on it. I'm not sure. I know in one of them, of the other cases, it was a plain error review. In this case, the parties agree that it's de novo review. So whatever happens in the other cases, I don't think will be binding here. Now, we have no problem. Mr. Feagins, his sentence on this case won't even start for several years. So I don't, there's no temporal urgency based on his circumstances. Yeah, because in part, frankly, depends on what those other cases say. I mean, they could write an opinion which is narrow enough so that we would have more room. They would say it is all right because here it was only two months or three months or so on, or it's all right because it isn't plain error, and therefore, and then we would have to face your issue. But they could also write an opinion which would, in fact, bind us. I, yeah, it's hard to see, I don't, I think they could really bind you in my direction if I'm not, if they find it's plain error, then it's clearly error here. So that's, I'm not opposed to this court waiting or there being some sort of coordination. I don't really know how that works, but what I am saying is that the fact pattern here is extreme because you have a lifetime supervised relief situation. And if you just, if you look. The point of the order here was December 31, 2023, and the sentencing was in September of 2023. So that was within the specified time frame, not the kind of catch-all additional time part of it that you're challenging now. So I guess this goes back to Judge Luria's question, why is this right? That's correct. It's still right because in our view, that order was not lawful. It didn't comply with the statute because it set forth an indefinite, I mean, this was within the definite portion of it, but overall, it created an indefinite designation for Judge Sullivan. And also, it took place five years after Judge Sullivan was, you know, first went to the circuit court, after he resigned from the district court. There's also, I mean, in the other arguments, there were questions about, well, isn't there a benefit to the judiciary to be able to keep the continuity of having a district judge, even though he's gone up to the circuit, continue with the violations on his case? And I submit to you that that argument is really overwhelmed by the, and I need to put this politically. I understand who I'm speaking to. You upheld Judge Calabresi and Judge Luria upheld Judge Sullivan in another appeal in this very case, an appeal of the 2018 violation of supervised release. So I understand that. But there's an unseemliness to having the same individual sit on the body that is supposed to be a neutral court of appeal over his own, over his own. But that is certainly something that applies to the previous cases as well. Yes. Yes, it is. Yeah. And you see, I guess I keep coming back to the question of saying that maybe when those cases come down, whichever way they come down, we should get more briefing. Because this one was in the period, as Judge Park has said, the others were not. On the other hand, the others were for a shorter time and this is a longer time. But isn't the time for us to consider that when we see what they say and have you then give us briefing about why this case is different your way and perhaps have oral argument then, but rather than try to decide these issues now before we know what really, where we're threading. I agree with you, Judge Calabresi. I think that's, I think that would be an efficient way to dispose of this really important issue. There's many cases pending, district court cases pending before Judge Sullivan. And much thought needs to be given to these orders. May I ask a question? Yeah. Is this issue also in other circuits? How many other circuits? How have they resolved it if they have resolved it? Yeah, there's no, I mean, I think you're writing on a blank slate in terms of this statute. Neither party presented case law that would be, you know, that would be controlling if it were in this circuit. And how often do you know in other circuits do circuit court judges sit by designation on district court matters? I don't have a number. What I have is some academic articles that we cited in the briefs that I don't have at the top of my head. There's an article by Judge Posner about this, noting the unseemliness of it, but also noting it's quite unusual compared to the other way around. I think the last panel had Judge Villardo on it from the Northern District. And he was like, well, is my designation in trouble? And no, it's not. That doesn't carry the same risks or concerns when a district judge sits on a circuit judge. So it's, I would say, fairly unusual to characterize it, but I don't have statistics to give you. Would this also apply to a, maybe not, to a Supreme Court justice sitting by designation on a circuit court? I have no idea. I mean, I don't, it's not, the statute is specific to circuit courts, to district courts. It's very specific. Would this argument potentially apply as a matter of the appointments clause? Well, I think you have the same equities, yeah, in terms of reviewing yourself. At the constitutional level, rather than the statutory level, it might apply just as much to Justice Breyer sitting with the First Circuit. That's correct. I mean, the constitutional argument really turns on this meaning of temporary. If it's true, the statute, the point of the statute was circuit judges used to hear, used to be, have trials. Correct. And those trials were interrupted when they stopped being allowed to have trials. So they said, continue your trials. It wasn't intended to have someone supervise, have a circuit judge supervise a defendant for life, which is the presentation. And that's the unique aspect, in your view, of this case. Of my fact pattern, yes. Unlike the other prior panel cases. Correct. We'll hear from the government. You deserve three minutes for rebuttal. Thank you, Your Honor. Counsel. Good morning. May it please the court. My name is Jessica Greenwood. I represent the government in this case. And I represented the government below at the violation of supervised release sentencing that is the subject of the current appeal. I'm going to focus on the statutory arguments that were the subject of Your Honor's questions of the appellant. And specifically the notion that. Well, you can do whatever you want. But he says this case is different. So there are two other cases.  I think Bradley and Gonzalez, Bradley and something, before us. And he says, well, you may not have to hold as a matter of prudence because my client is serving a lifetime term of supervised release. And this is different in that way. I'm happy to respond to that, Your Honor. So, first of all, I think the focus on Mr. Feigens' lifetime supervised release term has been unduly the center of the appellant's brief. And it's the wrong focus for a couple of reasons. First, for the ripeness reasons that Your Honor's raised in the appellant's argument. Here, the only harm and the only particular action by Judge Sullivan that is ripe and that the defendant currently has standing to challenge is his imposition of sentence in 2023. Pursuant to the 2022 designation order. You're saying this is different from the other cases for another reason, the other way. You're saying we should decide this without getting in the queue because of this point of when the sentence. The other way is we should decide it because this is lifetime rather than the other. I think what I'm trying to say, Your Honor, is that it's the same as the other cases. And that the outcome of those cases will likely be determinative here. The question in those cases is whether or not the language of the orders was temporary and authorized particular actions by the district court within the defined terms of those particular orders. Here, like Gonzalez and like Bradley, the question is whether an action, a specific action, the sentencing here, taken by Judge Sullivan within the defined time period of the 22 designation order was done pursuant to a temporary order in the public interest. I think that is the same question presented in Gonzalez and Bradley and will likely be dispositive here. So you say we should wait, and if those cases come out in some way that leaves something open, have argument or briefing then. I do think it will ultimately make sense to hold an abeyance. But I would like to just address the second prong of why I think the focus on lifetime supervision here is the wrong lens. Mr. Feigens has repeatedly focused on the fact that from his perspective and his relationship with Sullivan, from his view, will be a lifetime one. But the question here under the statute is whether or not the designation itself, the designation of Judge Sullivan, is a permanent one or not. And the difference between what the President and the Senate are permitted to do in appointing a district court judge for a lifetime, i.e. a permanent appointment, versus what is permitted under the designation statute is temporary. Those are opposites. It's either a permanent designation or a not permanent designation. And so the focus is from Judge Sullivan's perspective, has his appointment or designation to the district court been a permanent one? And the government submits that it is not. But the argument is if he's appointed for unfinished business, the question of whether that is permanent or that is temporary is can look to how unfinished the business is. Certainly, Your Honor. And I think if there was a situation in which the measure of the unfinished business was for Judge Sullivan's lifetime, that would be a permanent appointment. But that's not the measure. But what if it were for Mr. Feigens' lifetime? So, Your Honor, if we were to reach that question, which, again, I don't think we're there. But if we were there, and if that particular issue itself was right, I still submit that that is not a permanent designation. So a designation that allows Judge X to continue supervising the supervised release of a person who's on lifetime supervised release is not a lifetime appointment or a lifetime designation? No, again, it's because the focus is misplaced. It's not Judge Sullivan's lifetime, which renders it permanent. Well, but suppose Mr. Feigens' lifetime is many times longer. Then, Judge Sullivan, suppose I were the person sent down. My life expectancy is three years, 0.54. Not very long. And Mr. Feigens- I'm sorry to hear this. Well, I plan to offer him my life expectancy. But that's the way it is. So why, if realistically, that is for all of my lifetime, isn't that for an indefinite amount? So, again, I don't think, the government's position certainly is that it is not indefinite. Although it is, well, or I should say that indefinite is not the standard. It's whether it's temporary. And so the question, it may well be, right, that the end of that temporary term can't be defined today. But it nevertheless has an endpoint. That Chief Judge Livingston- I'm afraid it does. Although it isn't temporary. The other point- So the point you're making is the formal distinction between a life term and a 99-year term. Whether they're practically the same, it doesn't matter. It's once permanent, once temporary. Yes. And the hypothetical- Do you have any problem with this? Or was that, that's the argument? That is the argument, 100%. Which is the formalistic argument. Yes, Your Honor. I mean, that's not pejorative. When we're dealing with statutory interpretation, the formalistic argument here makes sense. And it comports with decades of practice in this circuit. It comports with common sense. And I will say, the hypothetical that Your Honor raised is precisely why this issue of lifetime supervision and its interplay with unfinished business isn't ripe. There are many, many things that could happen. Mr. Feigens is serving a sentence that will not cause him to be released from prison and begin a supervised release term for at least seven years. 2031 is my- or six years. Early 2031 is my understanding of his current release date. That may get moved up from a good time. By that point, there are a number of things that could have happened. There may be an intervening designation order. There may be situations where, ultimately, once he's released, there could be a motion to modify the terms of supervised release. Motions to terminate supervised release. That doesn't apply in these other- in Bradley and Gonzales. In Bradley and Gonzales, I believe- so Mr. Gonzales is serving a sentence, a significant sentence on a habeas- but that case is a habeas petition. It doesn't involve the supervised release violation. And for Mr. Bradley, I certainly don't think it's the amount of time that we're talking about sort of out into the future. So, again, there are a number of factors that sort of highlight the problem and the speculative nature of looking into the future about what could happen over the course of this lifetime supervised release. And then it makes more sense for this court to limit the issue to the issue actually presented. That is also presented in Gonzales and Bradley, which is the exercise of Judge Sullivan's power as a district court judge within the defined one-year term of the 22 designation appropriate under the statute. And we submit that it is. Well, I'm glad to see that the first case in that list has Judge Newman on it, who is even older than I am and so is very much aware of this demanding issue. I will say when the panel came out, Your Honor, we were very cognizant of that issue and thinking through the implications of someone who may have a very long life. But I just don't think it's the issue that's presented before the panel. I have a question that I also asked your friend on the other side about other circuits. And just what do other circuits do with respect to designations? Do you know? I do know somewhat anecdotally, Your Honor. In our brief, we did cite a number of cases in other circuits, I believe the Fourth Circuit, the Seventh Circuit, that designation in this particular context, that is, when a district court judge who has already been approved by the Senate is elevated to the circuit to continue working at their option on matters pending before them at the time, that that is a relatively common practice in other circuits. So like the appellant, we don't have statistics, but our understanding from sort of surveying the cases as well as anecdotal experience of AUSAs. But you don't have any cases where the issue was raised because, of course, many things are done until somebody raises the issue, and all of a sudden we say, hey, that's a problem. That's right. So there's not precedent in this particular circumstance. But there are designations, and we cite some cases in other contexts, naval appointments and others, where similar designations have faced appointments clause challenges, and there's never been a ruling upholding those in circumstances. But the government's view is that, and this goes back to this argument, this formalistic argument, is that the only inappropriate designation would say something like for the life of the judge, Judge Sullivan in this case, is designated for life. Is that right? Yeah, that's right. So both with respect to appointments clause and with respect to the statute, the concern is that the chief judge here, Judge Livingston, through the power given to her by Congress under Section 291, would somehow usurp the ability of the president to duly appoint inferior officers to the district court. And that is a lifetime appointment, and what the president and the Senate do is a lifetime appointment. So provided that the actions of Chief Judge Livingston under the statute don't infringe on that appointment power, then it comports with both the appointments clause and with the statute. And so provided it's not permanent, i.e. for Judge Sullivan's lifetime, that is an appropriate- And that would be so even if the appointment of a 92-year-old judge was for 70 years, because that would not be lifetime. So, Your Honor, again, there are limitations, right? And the way that Congress has framed the granting of that discretion to the chief judge is that not only it must be temporary, but the chief judge must, in their discretion, find it's also in the public interest. Oh, that's a separate- Right. And so I just say that to mean, although there are hypothetical situations where- Having me serve after I'm dead is certainly in the public interest. I simply mean to say, Your Honor, that although there are a number of hypotheticals we could engage in about the length of time that someone could sit by designation that may well feel it's getting to the edge of a lifetime appointment, that that's cabined by, or Congress has decided that the best person to decide the appropriate length of designation and the nature of the designation is the chief judge. But the statute, yes. That's correct. Can I just clarify one question?  I think this was Judge Lillia's question. Have there been any other courts that have upheld an order within unspecified end time, such as this unfinished business? Yes. So we cite Dyson, which is a case that involved unfinished business language, very similar to the current designation. That is cited on page 15 of our brief in footnote 2, Donegan v. Dyson. And there's also a citation there to a Fifth Circuit case that has a renewed designation also with unfinished business language. But was the issue raised in those cases? The issue was raised- Yeah, it was not directly raised, Your Honor, but those did involve those sorts of designations, which- No, I mean, it was done, it was okay, but the specific issue was not raised. That's correct. Thank you very much. Thank you, Your Honor. We'll hear from Bob. Yeah, so I'd like to say a couple things. First about the ripeness issue. The continuing designation of Judge Sullivan does affect Mr. Feigens today and until it's not. If the probation department or anyone else were to bring any sort of action against Mr. Feigens, the clerks would direct it to Judge Sullivan. Even that sounds like a ripeness issue. So there's not something ripe for us to decide with respect to the designation if it's hypothetical. I would say there is. Judge Sullivan is currently assigned to the case and he shouldn't be. So even if you didn't vacate this conviction, he shouldn't be forever assigned to the case. So if Mr. Feigens is not going to- Look, Judge Sullivan has given Mr. Feigens the maximum legal sentence at every single turn. He rejected our plea agreement that we had with the government. He made them present evidence. Mr. Feigens is less likely to bring any kind of post-conviction relief with Judge Sullivan sitting, knowing that the clerks will direct it to Judge Sullivan. The fact of Judge Sullivan's appointment affects Mr. Feigens' life every single day. So that's number one. Number two, the other distinction between the other two cases, which is important, and I sort of haven't thought about it for a minute, I welcome the opportunity for another round of briefing after they're decided because I think both of those will be decided under plain error. And if my calculation is correct, it means it's a one-way ratchet and I'd like to brief it whichever way those go. And maybe the government will concede if the panels in those cases find plain error. And the third thing I wanted to say, if there aren't further questions, is that in terms of how common this is around the country, again, I welcome the opportunity to quote Judge Posner, and I found it in my brief. There's a 2018 law review article on this very topic, which is cited at page 28 of our opening brief, in which Judge Posner of the Seventh Circuit observed that examples of appellate judges sitting by designation in the district courts seem rare when compared to the reverse scenario. So I think this is rare. I think it was a remedy from 1910 to a specific problem and that it's become stretched in a way that is not only not temporary, but is becoming unseemly in the case of the cases that we've heard this term. Unseemly doesn't sound like illegal or unconstitutional. Okay, the legal way to say unseemly is it's not in the public interest to have Judge Sullivan continue for years and years and years in the case of my client literally forever on these cases. I appreciate that very much. Thank you very much. Thank you.